# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

MARIBEL MONTALVO RIOS,

    Plaintiff,

    v.

MUNICIPALITY OF GUAYNABO, et al,

    Defendants.

CIVIL NO.: 14-1703 (MEL)

**OPINION AND ORDER**

This case stems from allegations that the Municipality of Guaynabo (hereafter "the Defendant" or "the Municipality") retaliated against its employee Maribel Montalvo Ríos ("Plaintiff") for filing and settling a sexual harassment lawsuit against the Municipality, filing a retaliation charge before the Equal Employment Opportunity Commission, and requesting benefits from the State Insurance Fund.[1] On January 23, 2017, the parties commenced a jury trial pursuant to Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq*. ("Title VII") and Puerto Rico's anti retaliation statute, P.R. Laws Ann. Tit. 29 § 194 *et seq*. On February 1, 2017, the Jury rendered a verdict, finding the Municipality not liable for retaliation.[2] Id. On February 3, 2017, judgment was entered in favor of the Municipality. ECF No.

---

[1] The complaint alleges that the Municipality reassigned Plaintiff to a new position and removed her duties, subjected her to cold shoulder treatment, threatened to transfer her to another division, improperly investigated her claim with the State Insurance Fund, and removed her equipment and supplies in retaliation for several instances of protected conduct. On December 16, 2016, Plaintiff's claims stemming from alleged cold shoulder treatment, investigation of her State Insurance Fund claim, and removal of her equipment and supplies were dismissed. ECF No. 92 at pgs. 26-27. Plaintiff was permitted at trial, however, to present evidence of cold shoulder treatment that resulted in exclusion from work meetings to the extent that such exclusion constituted a change in her role or duties. ECF No. 106. She was also permitted to present evidence that her work equipment and supplies were removed to show that her duties were removed and/or transferred to another employee. Id.

[2] The Jury's specific findings are discussed in more detail below.

131. On February 13, 2017, Plaintiff filed the pending motion requesting judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50, and in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59. ECF No. 132.[3]

Review of a Rule 50 motion is strongly weighted toward preservation of the jury verdict, and the "court is without authority to set aside a jury verdict and direct entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Keisling v. SER–Jobs for Progress, 19 F.3d 755, 759–60 (1st Cir. 1994); see N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 26 (1st Cir. 2005). On the other hand, a district court may order a new trial under Federal Rule of Civil Procedure 59(a) "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Crowe v. Marchand, 506 F.3d 13, 19 (1st Cir. 2007).

### 1. Closing Argument

Plaintiff contends that a new trial is warranted because Defense counsel made improper closing arguments to the Jury by misstating evidence, presenting facts that were not part of evidence, and stating that Plaintiff "wanted a second bite at the apple." Plaintiff did not object during defense counsel's closing argument. See Hrg. 1/31/2017 at 1:20-2:05 PM. In failing to object during closing argument, she has waived her right to challenge the same. See Phav v. Trueblood, Inc., 915 F.2d 764, 769 (1st Cir. 1990) ("If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking.")

---

[3] The Defendant filed a response in opposition. ECF No. 142. Plaintiff filed a reply to the response in opposition. ECF No. 148. The Defendant filed a sur reply. ECF No. 160.

## 2. Jury Instructions

Plaintiff contends that the Court erred in failing to send the written jury instructions to the Jury for their deliberations. In this case, the Jury was provided instructions orally. At sidebar, the parties were asked if there was any objection to the manner in which the instructions were provided to the Jury. The parties indicated there was no objection. See Hrg. 1/31/2017 at 2:56 PM. Still at sidebar, the parties were asked whether they preferred to have the written jury instructions provided to the Jury. Plaintiff's counsel requested that written instructions be provided to the Jury. Defense counsel requested that written instructions not be provided. Id. at 2:59 PM. The Jury was ultimately not provided with written instructions.

Plaintiff's argument with respect to jury instructions is untenable because Plaintiff cites no applicable authority for the position that a court must send written instructions to a jury for their deliberations. The sole case Plaintiff cites in support of this argument is inapposite as it solely concerns a challenge to a trial court's failure to contemporaneously disclose a jury note. See Cipes v. Mikasa, Inc., 439 F.3d 52, 55 (1st Cir. 2006). The First Circuit made no expression in Cipes as to whether a trial court must send written instructions to the jury for their deliberations.

## 3. Retaliation Under Title VII and Law 115

Lastly, Plaintiff contends the evidence does not support the Jury's verdict with respect to her retaliation claims pursuant to Title VII and Law 115. As a threshold matter, Plaintiff is procedurally barred from seeking judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. As Plaintiff did not submit a preverdict motion for judgment as a matter of law pursuant to Rule 50(a), there is no motion to renew pursuant to Rule 50(b). See Costa-Urena v. Segarra, 590 F.3d 18, 26 (1st Cir. 2009) ("It is well-established that arguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b).") See also Sánchez v. Puerto Rico Oil

Co., 37 F.3d 712, 723 (1st Cir. 1994) ("if a [movant] wishes to renew a motion for judgment as a matter of law at the post-trial stage with a view to having denial of that motion considered by the court of appeals, [she] is required to have moved for judgment as a matter of law at the close of all the evidence.") [4] Nevertheless, Plaintiff's motion for judgment as a matter of law would be denied even if it had been properly raised.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). Title VII also contains an anti-retaliation provision which prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation. 42 U.S.C.§ 2000e–3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). To prove a claim of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in protected conduct; (2) she experienced a materially-adverse employment action; and (3) there is a causal link between the protected conduct and the adverse employment action. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). If a plaintiff makes this showing the burden shifts to the defendant "to articulate a legitimate, non-retaliatory reason for its employment decision." Collazo v. Bristol-Meyers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010). "Courts have 'treated' retaliation claims arising from Law 115 'the same' as retaliation

---

[4] "Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission of the case to the Jury, and after the verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399 (2006). A motion for judgment as a matter of law pursuant to Rule 50(a) "may be made at any time before the case is submitted to the jury." Fed R. Civ. P. 50(a). If the court does not grant the motion, the court is considered to have submitted the matter to the jury subject to the court's later deciding the legal questions raised by the motion. Fed R. Civ. P. 50(b). No later than 28 days after the entry of judgment . . . the movant may file a *renewed* motion for judgment as a matter of law. . . ." Id. (emphasis added).

claims arising under Title VII." Arroyo-Flores v. IPR Pharm., Inc., No. CV 15-1998 (BJM), 2017 WL 944194, at *19 (D.P.R. Mar. 9, 2017) citing Ríos v. Municipality of Guaynabo, 938 F. Supp. 2d 235, 259 (D.P.R. 2013); Rivera Rodríguez v. Sears Roebuck de P.R., Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005).[5]

At trial, there was evidence of the following, which is not meant to be an exhaustive summary of all of the testimony and exhibits introduced for the jury's consideration. Plaintiff was hired by the Municipality of Guaynabo as an office clerk. ECF No. 154 at pg. 36. In the year 2006, she was promoted and transferred to the Municipality of Guaynabo Police Department. Id. at 37. Plaintiff was responsible for clerical duties in the area of purchases for the Municipal Police. Id. On April 8, 2010, Plaintiff filed a sexual harassment and retaliation complaint in federal court against Carmelo Correa and the Municipality of Guaynabo. Hrg 1/23/2017 at 2:12 PM. In February of 2013, while her case was still pending, Plaintiff reported to the State Insurance Fund to receive treatment for a shoulder injury. Id. She remained away from work for approximately ten months. Id. On August 5, 2013, the parties in Plaintiff's sexual harassment and retaliation case reached a settlement agreement. Id. On December 20, 2013, Plaintiff returned to work from State Insurance Fund leave. When Plaintiff returned to work, the Municipality no longer assigned her purchasing duties and instead assigned her to provide administrative support to Captain Wilfredo Martínez of the Guaynabo Municipal Police Department. ECF No. 154 at pg. 67.

Eduardo Faria, Human Resources Director for the Municipality of Guaynabo, testified that while Plaintiff was on leave, her former duties in purchasing and supplies were initially handled

---

[5] Retaliation claims under Law 115 are largely parallel in scope to those under Title VII, with the exception that Law 115 also prohibits retaliation for seeking benefits with the State Insurance Fund. See Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 136 (D.P.R. 2014) citing Feliciano Martes v. Sheraton, 182 D.P.R. 368, 395–396 (2011).

by police officer Yaira Rodríguez. According to Faria, the Municipality restructured the police department beginning in September 2013 to eliminate duplicate functions and to assign police officers who had been performing administrative tasks back into the field. On October 28, 2013, Rodríguez was reassigned to the field. Once Rodríguez was assigned out of the purchasing and supplies office, Lorraine González undertook Plaintiff's former duties in purchasing and supplies. There was evidence that on December 13, 2013, Lorraine González received notice that she would be assigned to render services at the Property Office, and on the same day Plaintiff's former duties in purchasing and supplies were assigned to Margarita Rivera. Faria testified that he could not leave the position open to wait to see if Plaintiff would come back from leave because the functions in purchasing needed continuity, and he could not leave González in her interim role because "she already had some other tasks assigned at the Municipal Police" (ECF No. 154 at pg. 56). According to Faria, from December 18, 2013, leading up to the day Plaintiff returned to work, more than ten employees received transfer letters related to the restructuring in the Guaynabo Municipal Police Department; and approximately 27 employees within the Municipal Police Department were moved or suffered changes as a result of the restructuring in the year 2013. Faria testified that the decision to assign purchasing duties to Margarita Rivera was made before Plaintiff returned to work on December 20, 2013, that the first time he became informed that Plaintiff would be returning back to work from leave was December 20, 2013, and that prior to that date he had no information as to whether Plaintiff would or would not be returning to work. ECF No. 154 at pg. 55.

On February 1, 2017, the Jury rendered a verdict, finding that the Municipality did not take adverse employment action(s) against Plaintiff because she filed a retaliation charge with the Equal Employment Opportunity Commission nor did it take adverse employment action(s) against her

because she sought benefits from the State Insurance Fund. ECF No. 124. While the Jury did find that the Municipality took adverse employment action(s) against Plaintiff because she filed and settled a sexual harassment lawsuit against the Municipality, it found the Municipality put forth a legitimate, non-retaliatory reason for the adverse action(s) against Plaintiff and that said reason was not a pretext to disguise retaliation. Id.[6]

### a. Pretext

Plaintiff contends the verdict should be overturned because the evidence presented at trial proves the Municipality's rationale for the adverse actions it took against Plaintiff—a department wide restructuring— is a pretext for retaliation. At trial, Plaintiff testified that "before December 20, 2013," she informed Deputy Director of the Human Resources Department Sandra Ramos Merced and Captain Wilfredo Martínez that she would be returning to work on the 20th of December. While this testimony could conflict with Faria's testimony that he did not know when

---

[6] While there appears to be some tension between the Jury's findings and its ultimate verdict for the Municipality, the verdict is consistent when considered in light of the Jury instructions. The Jury was provided the following instructions:

> To prevail on her retaliation claims, Maribel Montalvo must prove by a preponderance of evidence that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) she was subjected to the adverse employment action because of the protected activity.
>
> After she presents such evidence, the Municipality of Guaynabo may prevail by showing there was a legitimate, non-retaliatory reason for the alleged adverse employment action(s). Maribel Montalvo may then prevail if she proves by a preponderance of the evidence that the Municipality of Guaynabo's proffered reason for its actions is nothing but a pretext to disguise retaliation or a sham intended to cover up the employer's true motive.

The Jury's finding that the Municipality took adverse employment actions against Plaintiff can be understood as merely finding that Plaintiff met her *prima facie* burden. Another possible interpretation is that the Jury acknowledged the Municipality took action against Plaintiff for retaliatory and non-retaliatory reasons—in other words, that it acted with mixed motives. In accordance with the causation standard for Title VII retaliation cases, the jury was instructed that in order to prevail, Plaintiff must establish that the adverse employment action she alleges would not have occurred but for her protected activity. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 ("a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.") In any event, Plaintiff did not object to the verdict form used at trial. See Hrg. 1/31/2017 at 9:10 AM.

or if Plaintiff was returning from leave when her duties were assigned to Rivera, the matter is better left to the jury to make a credibility determination.

Plaintiff further argues that former Police Commissioner Abiezer Ortiz's testimony is overwhelming evidence the alleged restructuring is a pretext for retaliation. ECF No. 132 at pg. 10. Ortiz testified, in pertinent part, the following:

> Q: So there was a plan for everybody except Maribel Montalvo, correct?
> A: Well, her name did not appear in the administrative restructuring.
> Q: Because she wasn't part of the restructuring process, correct?
> . . .
> A: Well, at that moment she was reporting to the State Insurance Fund and I really didn't know her.
> . . .
> Q: So Maribel Montalvo was not part of the restructuring process, correct?
> A: Correct.

ECF No. 146 at pgs. 100-102

While Plaintiff contends this testimony is direct evidence the Municipality's reason for reassigning Plaintiff's former duties is not true, Ortiz's testimony is subject to more than one reasonable interpretation. One interpretation is that Plaintiff was not addressed in the restructuring plan because decision makers in the Municipality did not know when or if she would be returning to work. This does not necessarily foreclose that Plaintiff was affected by the restructuring, such as by having her former duties assigned to another employee as part of the restructuring. Ultimately, it is not the Court's prerogative to choose among competing interpretations, both of which are reasonable. The Jury is entitled to draw their own reasonable inferences based on their common sense and experience in order to reach conclusions.

Plaintiff contends there was other corroborating evidence of pretext including that (1) the Municipality admitted that Mayor Héctor O'Neil ordered Plaintiff's former duties to be removed; (2) Plaintiff was more qualified for the duties in purchasing and supplies than her replacement,

Margarita Rivera; (3) the Municipality gave shifting explanations for the adverse actions against Plaintiff; (4) and Plaintiff, Captain Martínez, and Margarita Rivera were not provided the reasons for Plaintiff's change in duties. Although there was evidence that Plaintiff was an exemplary employee and had greater experience than Rivera in purchasing, the Municipality did not argue that the change in Plaintiff's duties were due to her performance. Furthermore, while there was some evidence of pretext, the Jury is entitled to weigh evidence and to make credibility determinations. A reasonable jury could find that the restructuring was not a pretext for the adverse actions Plaintiff suffered in light of the evidence that: (1) the police officer temporarily assigned to perform Plaintiff's purchasing duties was reassigned as a part of the restructuring, (2) Faria did not know when or if Plaintiff was returning from leave when he recommended the purchasing duties be assigned to Margarita Rivera, and (3) it was necessary to find a permanent replacement for Plaintiff's former duties to provide continuity to the purchasing functions. For these same reasons, the verdict is not against the law, against the weight of credible evidence, or tantamount to a miscarriage of justice. In the end, it is not for the Court to impose its own views as to which side's evidence is more persuasive; that is the Jury's province.

### b. Seeking Benefits from the State Insurance Fund

Plaintiff next challenges the Jury's finding that the Municipality did not take adverse action against Plaintiff because she sought benefits from the State Insurance Fund. She contends that the proximity between her return from leave and the adverse employment actions she suffered prove that the Municipality retaliated against her because she sought benefits from the State Insurance Fund. While courts have held in the summary judgment context that temporal proximity between protected conduct and adverse employment actions permits an inference of causation, see Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004), Plaintiff cites no applicable authority

for the position that temporal proximity requires a jury to find a causal relationship.[7] Therefore, there is no reason to disturb the Jury's verdict on these grounds.

### c. Filing a Retaliation Charge with the EEOC

Lastly, Plaintiff challenges the Jury's finding that the Municipality did not take adverse employment action(s) against Plaintiff because she filed a retaliation charge with the EEOC. This argument is untenable because, as noted, both parties presented evidence of alternative explanations the Jury could have credited in concluding that Plaintiff's retaliation charge with the EEOC was not the reason for the adverse employment actions she suffered. Furthermore, while there was some evidence that Plaintiff was threatened with a transfer shortly after filing a retaliation charge with the EEOC, there was also testimony that the alleged threat was actually an offer of promotion. Even if the alleged offer was not put in writing and did not comply with the personnel regulations for the Municipality of Guaynabo, the Municipality's evidence in support of the offer is not so weak that a reasonable jury could not credit it. As Plaintiff's counsel argued at trial in response to Defendant's oral Rule 50 motion, the evidence regarding the alleged promotion is a "credibility issue." Hrg. 1/30/2017 at 4:52 PM. Thus, weighing whether any comments about a potential transfer were a threat or an offer of promotion is better left to the Jury.

For the foregoing reasons, Plaintiff's motion requesting judgment notwithstanding the verdict or a new trial (ECF No. 132) is DENIED.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 9th day of August, 2017.

s/Marcos E. López
U.S. Magistrate Judge

---

[7] Plaintiff did not submit a proposed jury instruction on temporal proximity. See ECF No. 94. Furthermore, she did not object to the Jury instructions that were read to the jury. Thus, she has waived her argument with respect to temporal proximity.